**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BRENT GAY,**

        **Plaintiff,**

    **v.**

                        **Civil Action 2:25-cv-652**
                        **Judge Edmund A. Sargus, Jr.**
                        **Magistrate Judge Kimberly A. Jolson**

**UNION LOCAL SCHOOL**
**DISTRICT, et al.,**

        **Defendants.**

## OPINION & ORDER

Before the Court is Plaintiff's Motion for Leave to Amend (Doc. 58).  For the following reasons, the Motion is **GRANTED**.

## I.    BACKGROUND

This case is about a physical altercation between two adult men at a high school football game.  As told by the operative complaint, Plaintiff and his wife attended the Union Local Jets' football game against the Barnesville Shamrocks on October 25, 2025.  (Doc. 40 at ¶ 20).  At halftime, Union Local was losing badly—to the point that Plaintiff and his wife decided to leave the game.  (*Id.* at ¶ 21).  As Plaintiff exited the stands, he spoke to one of the assistant coaches, Defendant Butler, whom he had known for years.  (*Id.* at ¶¶ 21–23).  Plaintiff asked Butler if he had "watch[ed] any film this week"—a self-described sarcastic criticism of Union Local's coaches' lack of preparation.  (*Id.* at ¶¶ 25, 33).  According to Plaintiff, Butler walked over to him and began "lunging at and hitting [Plaintiff] hard in the collarbone with both hands."  (*Id.* at ¶ 34).  Then, Butler "grabbed [Plaintiff] by the coat, pulling it up and bunching it around his throat . . . forc[ing] him back[.]"  (*Id.* at ¶ 35).  A different coach attempted to break up the fight.  (*Id.* at ¶ 36).  All three fell to the ground, where Plaintiff suffered additional kicks to his ribs and back.

(*Id.*). A police officer intervened and handcuffed Plaintiff. (*Id.* at ¶ 37). Once the officer allowed Plaintiff to leave, his wife drove him to the hospital. (*Id.* at ¶¶ 40–45). He suffered abrasions and contusions to his face and ribs. (*Id.* at ¶ 47).

Plaintiff brought this litigation against both Butler and the Union Local School District Board of Education (the "Board"). (*Id.* at ¶¶ 11–12). Against the Board, he alleges *Monell* liability under 42 U.S.C. § 1983 and reckless hiring, training, supervision, discipline, staffing, and retention under state law. (*Id.* at ¶¶ 100–112, 145–149). Plaintiff also alleges Butler violated his First Amendment right to free speech under 42 U.S.C. § 1983. (*Id.* at ¶¶ 113–120). He further raises several causes of action against Butler under state law, including civil liability for criminal acts, civil assault, civil battery, and the intentional infliction of emotional distress. (*Id.* at ¶¶ 121–144, 150–154). Plaintiff seeks declaratory relief, as well as compensatory and punitive damages and attorney fees. (*Id.* at 27–28).

Almost immediately after filing this case, Plaintiff amended his complaint. (Doc. 3). A few months later, the Court granted Plaintiff's request to extend the parties' deadline to amend the pleadings to November 14, 2025. (Doc. 27). The Court subsequently granted him leave to amend twice more—with the latter amendment merely correcting an inadvertent oversight. (Docs. 30, 31, 38, 39). In the meantime, the parties engaged in discovery. Upon the parties' request, the Court set the deadline to complete fact discovery to June 30, 2026. (Doc. 53). At that time, the Court warned the parties that it would not extend the deadline further. (*Id.*). Still, a couple weeks before the fact discovery deadline, Plaintiff asked to amend his complaint once again. (Doc. 58). He wants to add many new factual allegations, as well as First Amendment facial and as-applied challenges to spectator policies in Union Local's athletic department handbook against the Board. (*Id.*; *see also* Doc. 58-2 at 40 (proposed amendment also adding a request to enjoin Defendants

2

from enforcing the policies)).  Both Defendants oppose.  (Docs. 62, 63).  This matter is ready for consideration.  (Docs. 58, 62, 63, 66).

## II.    STANDARD

Under Rule 15, when a party seeks leave of court to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)).  In interpreting this Rule, "[i]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint."  *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation modified).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Trial courts enjoy broad discretion in deciding motions for leave to amend.  *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).

Yet, "[o]nce a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)" before considering the proposed amendment under Rule 15.  *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008) (citing *Leary v. Daeschner*, 349 F.3d 888, 906–07 (6th Cir. 2003)).  "[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order."  *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007).  The Court must also consider "the potential prejudice" to the other parties.  *Leary*, 349 F.3d at 909.

3

## III.    DISCUSSION

The Court begins by considering Plaintiff's request to amend the case schedule under Rule 16 before evaluating his proposed amendment under Rule 15.

### A.    Rule 16

Plaintiff's deadline to amend his complaint was November 14, 2025. (Doc. 27). As described above, the first question the Court must answer in considering a modification to the case schedule is whether Plaintiff acted diligently in attempting to meet this deadline. The second question is whether the amendment would prejudice Defendants. In both respects, the timeline of discovery matters here.

#### 1.    Diligence

Plaintiff served the Board with his first request for production on October 23, 2025. (Doc. 62-2). On May 8, 2026, the Board supplemented its responses and produced a November 2010 athletic department handbook containing the Spectator Code of Conduct that forms the basis for Plaintiff newly proposed claims. (Doc. 58-4; *see also* Doc. 58-5). Then on May 21 and 22, Plaintiff asked Union Local's former athletic director, Nick Nardo, and Defendant Butler about the Spectator Code of Conduct at their depositions. (Docs. 58-6, 58-7). One week later—the day of the Board's 30(b)(6) deposition—Plaintiff informed Defendants he intended to amend his complaint. (Doc. 58 at 4). Two weeks after that, Plaintiff filed the Motion at bar. (*See generally id.*).

Plaintiff argues that this sequence of events evidences diligence because he was delayed in discovering the Spectator Code of Conduct due to circumstances beyond his control. (Doc. 58 at 5). In other words, because the Board did not produce the athletic handbook until May, he could not have asked to amend based on the handbook's contents by the original amendment deadline in

4

November.  (*Id.* (citing *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-CV-0569, 2007 WL 1683668 (S.D. Ohio June 8, 2007)).  Plaintiff further justifies not filing his Motion until after he deposed Nardo and Butler because he was waiting to obtain the information he needed to meet the federal pleading standard.  (*Id.* at 6).

The Board sees things differently.  The Board admits that the athletic handbook was only discovered as it was preparing for depositions.  (Doc. 63 at 3 (stating "prior to its discovery inside a binder on a shelf in the athletic office," administrators were not aware of the handbook)).  But the Board submits Plaintiff's delay of more than a month in between learning of the handbook's existence and his Motion does not constitute diligence.  (*Id.* at 5).  Additionally, the Board argues that many of Plaintiff's new factual allegations do not rely on the policies from the athletic handbook, and there is no reason he could not have alleged them sooner.  (*Id.* at 5, 7–8 (noting some of Plaintiff's new factual allegations incorporate other policies Plaintiff received as part of the Board's initial disclosures and others include screenshots of texts that do not reference the Spectator Code of Conduct or the athletic handbook)).

Defendant Butler likewise contests Plaintiff's purported diligence.  According to Butler, Plaintiff could have discovered the policies underlying his proposed amendment when the Board provided its initial disclosures.  (Doc. 62 at 6).  As part of those disclosures, the Board provided Plaintiff pages of the Ohio High School Athletic Association's policy describing "sportsmanship responsibilities" for parents and adult fans and the Board's policies related to school-community relations, public conduct on school district property, and public complaints.  (*See* Doc. 62-1 at 7, 10–13).  In Butler's view, Plaintiff should have further inquired into the existence of local policies or codes of conduct after receiving these disclosures.  (Doc. 62 at 7 (also noting Plaintiff's subsequent requests for production requested only policies provided to staff about free speech and

5

interactions with spectators)).  He also argues that an October 2024 video of the Board's superintendent addressing public criticism of coaches should have put Plaintiff on notice that a related formal policy may exist.  (*Id.* at 9).  Butler finally suggests that if Plaintiff had scheduled depositions of "key fact witnesses" sooner, he would have discovered the information underlying his proposed amendment before May.  (*Id.* at 8–9).  In essence, Butler argues Plaintiff's situation is one of his own making.  (*Id.* at 11–12).

Nonetheless, the Court finds Plaintiff was diligent in attempting to meet the deadline to amend set forth in the pretrial order.  This Court has noted "if a party is delayed in discovering the basis for amending its pleadings due to circumstances beyond its control, it may use that delay as a basis for arguing that a Rule 16(b) order deadline should be extended."  *Permasteelisa CS Corp.*, 2007 WL 1683668, at *2 (citing *Noyes v. Kelly Services*, 488 F.3d 1163 (9th Cir. 2007)).  Here, it is uncontested that the Board did not provide Plaintiff with a copy of the athletic handbook or the Spectator Code of Conduct until months after the amendment deadline passed.  (*See* Doc. 63 at 3).  This is a circumstance beyond Plaintiff's control.  *Cf. Burke v. Ohio Dep't of Rehab. & Correction*, No. 2:21-CV-48, 2023 WL 4199108 (S.D. Ohio June 26, 2023) (finding no good cause for a late filed amendment where the delay in discovery was created by the plaintiff's actions).  Further, even if Plaintiff propounded discovery requests more specific to a code of conduct for adult fans before the amendment deadline, it is unlikely the Board would have produced the Spectator Code of Conduct.  At the time the Board produced the athletic handbook, the Board had only just found it in preparing for depositions.  (Doc. 63 at 3).  It is unclear how Plaintiff was meant to divine that the handbook existed when the Board was not even aware of it until recently.

Additionally, the Court declines, as Defendant Butler suggests, to deny Plaintiff's Motion because he deposed witnesses at the tail-end of discovery.  While deposing witnesses earlier may

6

have resulted in the handbook being discovered and disclosed sooner, under the circumstances the Court will not hold Plaintiff to the standard of hindsight. *Cf. Permasteelisa CS Corp.*, 2007 WL 1683668, at *2 (rejecting a similar argument and noting the plaintiff "delayed taking certain depositions until document discovery was complete, which is a reasonable way in which to proceed"). The Court is also not persuaded by the Board's argument that Plaintiff lacked diligence because he did not seek leave to amend until a month after he knew of the Spectator Code of Conduct. (Doc. 63 at 5). One month is not so long. And the Court has no reason to doubt Plaintiff's assertion that his choice to wait until after depositions to add the new claims was an attempt at responsible pleading. (Doc. 66 at 9–10); *see also* Fed. R. Civ. P. 11(b)(2) (noting that by presenting a pleading to the Court, an attorney certifies that to the best of her knowledge, information, and belief that claims are warranted by existing law).

The Court acknowledges some new allegations contained in Plaintiff's proposed amendment reference policies Plaintiff had access to before May 8 or otherwise, on their face, do not concern the Spectator Code of Conduct. (*See, e.g.*, Doc. 58-3 at ¶¶ 54–65). But nothing in Rule 16 requires the Court to analyze the diligence underlying each individual line of a proposed amendment. And the bulk of the redlines in the proposed amendment readily relate to the new First Amendment claims. (*See, e.g.*, *id.* at ¶¶ 95–102, 151–187). On balance and considering all the circumstances, Plaintiff was diligent enough to justify modifying the case schedule under Rule 16. *Cf. Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 460 (S.D. Ohio 2021) (finding Rule 16's good cause standard met even though the parties disputed when plaintiff discovered the information underlying the proposed amendment where the timeline showed the plaintiff was "diligent enough").

        2.     *Prejudice*

Diligence, while the primary consideration, is not the end of the Rule 16 good cause inquiry. The Court must also consider the prejudice Defendants would face if the case schedule were modified. Again, the timeline informs the Court's analysis.

Plaintiff asked for leave to amend 210 days after his deadline to do so. (*See* Doc. 27). In the intervening months, Defendant Butler filed a motion for judgment on the pleadings (Doc. 44), and the parties engaged in substantial discovery, including depositions. Additionally, the fact discovery deadline passed as the Court waited for the parties to brief the Motion at bar. (*See* Doc. 53).

Defendants cite the expiration of the discovery deadline as indicative of prejudice. Both say an amendment will necessitate more discovery, with the Board specifying that "at minimum" it would "need to conduct discovery regarding whether the Handbook was ever even adopted by the Board, whether its terms have been enforced, and whether it has been superseded by OHSAA and other Board polices[.]" (Doc. 63 at 5; *see also* Doc. 62 at 14). Defendants also state that they will be prejudiced by the inevitable extensions to other case schedule deadlines—including the discovery deadline—that will follow the amendment. (Doc. 63 at 5–6, 9–10; Doc. 62 at 15).

In response, Plaintiff argues that Defendants overstate their case. Plaintiff first contests that any other deadline in the case schedule would need to be shifted should he be granted leave to amend. (Doc. 66 at 13). He then suggests that Defendants should have begun to conduct discovery related to his unalleged claims when Plaintiff gave them notice he wanted to amend on May 29. (*Id.* at 14). He also contends that the discovery the Board claims it needs can be easily obtained from its own staff rather than obtained via a more costly and time-consuming subpoena or discovery device. (*Id.* at 13 (also arguing Defendant Butler does not need any more discovery)).

8

Plaintiff's attempts to minimize the prejudice Defendants would face as a result of a late-stage amendment are not compelling. *Cf. Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) ("[A]llowing amendment after the close of discovery creates significant prejudice[.]") (citation omitted). Plaintiff is not in a position to unilaterally proclaim that neither Defendant should need to use discovery mechanisms to defend against his new factual allegations and claims. It is likewise odd that Plaintiff faults Defendants for not engaging in this discovery before the Court even granted him permission to amend. And, it is disingenuous for Plaintiff to insist that no other deadline will need to be extended as a result of the amendment, when the discovery deadline has already passed and the other case schedule deadlines are fast approaching. The fact remains that allowing Plaintiff to amend at this point will increase the time and cost of this litigation.

At the same time, the Court is hesitant to say that Defendants would be so unduly prejudiced by the case schedule modification that prejudice outweighs Plaintiff's diligence. *See E.E.O.C. v. U-Haul Int'l, Inc.*, 286 F.R.D. 322, 325 (W.D. Tenn. 2012) ("Prejudice to the non-moving party is a relevant consideration [in a 16(b) analysis], 'but the main focus should remain on the moving party's exercise of diligence.'") (quoting *Cooke v. AT&T Corp.*, No. 2:05-cv-374, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007)). Plaintiff's new claims and factual allegations are not so different from what is in the operative complaint that the new discovery will be overly burdensome. Ultimately, a bit more discovery generally does not change the Court's good cause finding. *Ousley*, 339 F.R.D. at 460. This is especially true in light of the Court's ability to minimize prejudice as much as possible by reopening discovery for brief time and holding the parties to tight case deadlines.

9

Therefore, pursuant to its "broad discretion in deciding motions for leave to amend," the Court finds that Plaintiff has exercised enough diligence and prejudice to Defendants can be tempered. Rule 16(b)'s good cause requirement is satisfied.

### B.     Rule 15

The Court's analysis does not end at Rule 16. The Court must still consider whether Plaintiff should be granted leave to amend under Rule 15. As noted above, the Court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff submits there is good cause to grant him leave to amend because Defendants will not be prejudiced. (Doc. 58 at 5). Additionally, Plaintiff says if the Court bars his amendment, he will file a new case and move to consolidate that one with this action. (*Id.*). So judicial economy is furthered by permitting the amendment now. (*Id.*).

Still, Defendants contend justice does not require allowing Plaintiff to amend so late. They both again cite to the prejudice they would face if the amendment were granted, and they argue Plaintiff's amendment would be futile. (Doc. 62 at 13–17; Doc. 63 at 9–17). The Court briefly considers each.

### 1.     Prejudice

The Court addressed the majority of Defendants' prejudice arguments above. To reiterate, the Court does not find that Defendants would be so unduly prejudiced by the amendment's impact on discovery or the case schedule that prejudice overcomes the liberal policy in favor of amendment.

Yet, Defendant Butler further claims he would be prejudiced by an amendment because it would necessarily moot out his fully briefed motion for judgment on the pleadings. (Doc. 62 at 14–15). Plaintiff responds that he offered to stipulate to "protect [the motion for judgment on the

pleadings] from the effects of an amended complaint, in which that same motion would just be deemed to apply to the new complaint." (*Id.* at 14 (stating the offer "still stands")).  But apparently Defendant Butler did not agree.

Courts have found the existence of a fully briefed pleadings motion an insufficient reason to deny amendment.  *See, e.g.*, *Bear v. Delaware Cnty.*, No. 2:14-CV-43, 2015 WL 1954451, at *2 (S.D. Ohio Apr. 28, 2015) (finding prejudice adequately addressed by the party re-filing their existing brief in conjunction with a short supplement); *City of Gallatin v. Gallatin Data Centers, LLC*, No. 3:24-CV-00868, 2025 WL 4663941, at *5 (M.D. Tenn. Apr. 14, 2025) (noting that the fact a pending motion for judgment on the pleadings must be refiled following amendment "is simply a function of the rules and does not standing alone without other aggravating circumstances constitute sufficient prejudice to deny a motion for leave to amend"); *cf. Mays v. Columbus Police Dept.*, No. 2:20-CV-1060, 2021 WL 4453638, at *4 (S.D. Ohio Sept. 29, 2021) (denying a plaintiff's request to amend when summary judgment motions had been filed), *report and recommendation adopted*, No. 2:20-CV-1060, 2021 WL 5231885 (S.D. Ohio Nov. 10, 2021), *aff'd*, No. 21-4119, 2022 WL 17228814 (6th Cir. Oct. 6, 2022).  So too here, Defendant Butler has several options to address his mootness concerns, particularly in light of the fact that Plaintiff's amendment does not allege any new causes of action against him.  These include—but are not limited to—discussing the stipulation described above or re-filing his existing motion with a short supplement addressing the new factual allegations.

For these reasons, the Court again finds prejudice an inadequate reason to deny Plaintiff's Motion.

11

2. *Futility*

Finally, the Court is unmoved by Defendants' futility arguments.  At this stage, the Undersigned must determine only "whether the futility of an amendment is so obvious that it should be disallowed." *Bear*, 2015 WL 1954451, at *3; *see also Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 323 (S.D. Ohio 2002) (discussing that courts will not "ordinarily consider the merits of a proposed amended complaint in ruling on a motion for leave to amend unless it appears to be frivolous").  On its face, Plaintiff's amended complaint clears this low hurdle.  (Doc. 58-2). Further evaluating Defendants' arguments would require the Undersigned to address the merits of Plaintiff's claims.  *Moraine Prop., LLC v. Ethyl Corp.*, No. 3:07-cv-229, 2009 WL 10679543, at *1 (S.D. Ohio June 22, 2009) (noting procedural complications that arise when parties raise futility arguments for a magistrate judge's ruling).  The better course is to permit amendment and allow Plaintiff's claims to be tested on dispositive motions before the District Judge.  *Bear*, 2015 WL 1954451, at *3 (saying "it is the better exercise of discretion to permit the amendment" and allow the parties to brief motions to dismiss); *Durthaler v. Accts. Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) (noting the Court "has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed").  In sum, futility does not justify denying Plaintiff leave to amend.

\*\*\*

All told, the Court finds that Plaintiff has met his burden under both Federal Rule of Civil Procedure 16 and 15 to modify the case schedule and file an amendment.  Plaintiff's Motion for Leave to Amend (Doc. 58) is **GRANTED**.  Plaintiff is **ORDERED** to file a clean copy of the Third Amendment Complaint **on or before July 20, 2026**.

12

Additionally, Plaintiff and Defendant Butler are **ORDERED** to confer on the offered stipulation concerning Butler's pending motion for judgment on the pleadings.  If they do not file a stipulation **within seven (7) days**, the Court intends to deny Butler's motion (Doc. 44) as moot. The parties are advised that should either Defendant file a motion to dismiss or motion for judgment on the pleadings in response to Plaintiff's Third Amended Complaint, the Court intends to expedite briefing.

Finally, the parties are **ORDERED** to confer on an amended case schedule.  The parties are **ORDERED** to propose the same in a joint status report **within seven (7) days**.  The proposed schedule should envision efficient, realistic deadlines.  The parties should also include a deadline for mediation.  The parties are **WARNED** that the Court will grant no further extensions to the schedule it ultimately adopts.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Amend (Doc. 58). Plaintiff is **ORDERED** to file a clean copy of his Third Amended Complaint **on or before July 20, 2026**.  The parties are **ORDERED** to confer on deadlines moving forward and file a joint status report proposing a case schedule **within seven (7) days**.

IT IS SO ORDERED.


Date:   July 16, 2026                                  /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE

13